UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIRGIL RAY GREEN (#189440),

         CASE NO. 2:12-CV-12319
    Plaintiff,    JUDGE PATRICK J. DUGGAN
         MAGISTRATE JUDGE PAUL J. KOMIVES

v.

DAVID MESSER, ALLEN HOWARD,
CRAIG HENRICKS, ROGER HEATH
and VICKI LEWIS,

     Defendants,

_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS' NOVEMBER 2, 2012 MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT (Doc. Ent. 13)**

I.  RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.  REPORT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
  A.  Plaintiff's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
  B.  Defendants' Dispositive Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
  C.  Fed. R. Civ. P. 56 ("Summary Judgment") . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
  D.  Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
    1.  Plaintiff was transferred to ARF on Friday, March 16, 2012. . . . . . . . . . . . . . . . . . .  4
    2.  Plaintiff received misconduct tickets on Monday, March 19, 2012 and Tuesday, March 20, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
    3.  Two of plaintiff's ARF grievances were received at Step I during March 2012. . . . . . .  6
    4.  Plaintiff claims that defendants engaged in First Amendment retaliation. . . . . . . . . . .  7
    5.  Plaintiff's claims against Lewis which relate to the events of March 20, 2012 are not exhausted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
    6.  Plaintiff's First Amendment retaliation claims against defendants do not survive summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
    7.  Defendants are entitled to dismissal of plaintiff's conspiracy claim. . . . . . . . . . . . . . .  28
    8.  The Court should deny plaintiff's May 8, 2013 Fed. R. Civ. P. 56(d) ("When Facts Are Unavailable to the Nonmovant.") request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29
    9.  The Court need not address defendants' entitlement to qualified immunity. . . . . . . . .  32
    10.  The Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

III.  NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

1

I.   **RECOMMENDATION:** The Court should grant defendants' motion to dismiss, or in the alternative, for summary judgment (Doc. Ent. 13).  Furthermore, the Court should deny plaintiff's May 8, 2013 Fed. R. Civ. P. 56(d) request (Doc. Ent. 19).

II.   **REPORT:**

A.   **Plaintiff's Complaint**

Virgil Ray Green (#189440) is currently incarcerated at the MDOC's Macomb Correctional Facility (MRF) in New Haven, Michigan, where he is serving a sentence imposed on October 14, 2003 for an April 24, 2003 armed robbery (Mich. Comp. Laws § 750.529). *See* Case No. 03-005631-02 (Wayne County); www.michigan.gov/corrections, "Offender Search;" *see also* Doc. Ent. 18.

On May 29, 2012, while incarcerated at the MDOC's Gus Harrison Correctional Facility (ARF) in Adrian, Michigan, Green filed the instant, pro se verified civil rights complaint against defendants David Messer, then an MDOC ARF Assistant Resident Unit Supervisor (ARUS); Allen Howard, described as an MDOC ARF Corrections Officer (C/O); Craig Henricks, an MDOC ARF C/O; Roger Heath, an MDOC ARF C/O; and Vicki Lewis, an MDOC ARF C/O, in their individual capacities.  Doc. Ent. 1 ¶¶ 5-9; *see also* Doc. Entries 9 and 12 (Appearances of Counsel), Doc. Entries 13-6, 13-7, 13-8 and 13-9 (Affidavits).  Plaintiff seeks declaratory relief, compensatory and punitive damages, and an award of costs, expenses and interest.  Doc. Ent. 1 at 8 ¶¶ A-D.

B.   **Defendants' Dispositive Motion**

On September 21, 2012, Judge Duggan entered an order (Doc. Ent. 11) granting motion for enlargement of time to respond to complaint (Doc. Ent. 10) and setting the response deadline

for November 5, 2012. Currently before the Court is defendants' November 2, 2012 motion to dismiss, or in the alternative, for summary judgment. Doc. Ent. 13. They argue:

I.      Plaintiff did not file a grievance regarding his Complaint allegations against Defendant Lewis.

II.     Plaintiff's property was seized because it was determined to be contraband, irrespective of any grievances he filed.

III.    Defendants acted reasonably and did not violate Plaintiff's clearly established constitutional rights.

IV.    Plaintiff's State law claims should be dismissed.

Doc. Ent. 13 at 3, 8-24.[1]

On November 7, 2012, I entered an order setting the response deadline for January 6, 2013. Doc. Ent. 15. Plaintiff filed a verified response on November 29, 2012 (Doc. Ent. 16), and defendants filed a reply on December 11, 2012 (Doc. Ent. 17).

## C.    Fed. R. Civ. P. 56 ("Summary Judgment")

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

With respect to supporting factual positions, Fed. R. Civ. P. 56 provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

---

[1]Judge Duggan has referred this case to me for pretrial matters. Doc. Ent. 14.

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Fed. R. Civ. P. 56 further provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Fed. R. Civ. P. 56(c)(4) ("*Affidavits or Declarations.*").  Also, it states:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1)   give an opportunity to properly support or address the fact;
(2)   consider the fact undisputed for purposes of the motion;
(3)   grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it; or
(4)   issue any other appropriate order.

Fed. R. Civ. P. 56(e) ("Failing to Properly Support or Address a Fact.").

**D.   Analysis**

**1.   Plaintiff was transferred to ARF on Friday, March 16, 2012.**

The allegations underlying the complaint begin with Green's Friday, March 16, 2012 transfer to ARF (Doc. Ent. 1 ¶ 13)[2] and continue with his efforts to secure his personal property. Doc. Ent. 1 ¶¶ 13-21.  Plaintiff then describes a Monday, March 19, 2012 morning shakedown and property confiscation (Doc. Ent. 1 ¶ 22-25), a Tuesday, March 20, 2012 confiscation of

---

[2]*See also* Doc. Ent. 13-7 at 5; Doc. Ent. 13-8 at 6; Doc. Ent. 13-8 at 14-16.

4

personal property (Doc. Ent. 1 ¶¶ 27-30), the receipt of two misconducts for being in possession

of contraband (Doc. Ent. 1 ¶¶ 26, 31), and findings of "guilty" on Friday, March 23, 2012 (Doc.

Ent. 1 ¶ 32).

**2.      Plaintiff received misconduct tickets on Monday, March 19, 2012 and Tuesday,
         March 20, 2012.**

MDOC Policy Directive 03.03.105 ("Prisoner Discipline"), effective April 9, 2012, states

that "[d]isciplinary sanctions shall be imposed against prisoners for rule violations in accordance

with due process requirements."  There are Class I, Class II and Class III misconducts.  MDOC

PD 03.03.105, Attachments A, B & C.  Common examples of a Class III misconduct for

contraband are "[p]ossession of unauthorized items or anything with someone else's name or

number on it; having excessive store items."  MDOC PD 03.03.105, Attachment C.[3]

On Monday, March 19, 2012, Henricks issued Green a Class III misconduct for

contraband (altered television, typewriter and headphones).  Doc. Ent. 13-8 at 7, Doc. Ent. 13-9

at 5.  On Tuesday, March 20, 2012, Lewis issued Green a Class III misconduct for contraband (1

white out, 1 book altered number, 6 print wheels, 5 typewriter ribbons and 2 empty print wheel

cases, noting that Green did not currently have possession of a typewriter and did not have "staff

authorization to be in possession of these items.").  Doc. Ent. 16 at 10.[4]

---

[3]Attached to plaintiff's response is a copy of the ARF Prisoner Guide Book, Part 2,
wherein contraband is defined as "the possession or use of non-dangerous property which a
prisoner has no authorization to have.  Examples of contraband are: possession of anything with
someone else's name or number on it, excessive store items, any property that is altered, and
food items from the kitchen.  You are allowed 1 piece of fruit upon exiting from food service
after a meal."  This section of the guide also states that contraband is any property "NOT in its
original state[.]"  *See* Doc. Ent. 16 at 37-51.

[4]Among the attachments to defendants' motion are a March 20, 2012 electronic mail
from Lewis to Messer (Doc. Ent. 13-8 at 9), a Nov./Dec. 2003 invoice from Bennett Brothers.

Messer found Green guilty of the misconducts on Friday, March 23, 2012. The combined sanctions included six days loss of privileges (beginning March 28, 2012 and ending April 3, 2012) and destruction of the television, typewriter, headphones, typewriter accessories, book and white out per policy. Doc. Ent. 13-8 at 8, Doc. Ent. 16 at 12.

On April 3, 2012, Green's misconduct appeal was disapproved. Doc. Ent. 16 at 14.

**3.     Two of plaintiff's ARF grievances were received at Step I during March 2012.**

MDOC Policy Directive 03.02.130 ("Prisoner/Parolee Grievances"), effective July 9, 2007, states that "[p]risoners and parolees shall be provided with an effective method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement." The MDOC grievance process has three steps. *See* MDOC PD 03.02.130, ¶¶ P-GG.[5]

Defendants have provided plaintiff's MDOC Prisoner Step III Grievance Report, dated May 2009 to Present. Among the many grievances listed, only three are attributable to ARF: ARF-12-03-1045-19z, ARF-12-03-1046-19a and ARF-12-04-1353-28b. Doc. Ent. 13-3. Two of these grievances were received at Step I during March 2012 - the period of time at issue in this complaint.[6]

First, on March 17, 2012, Green completed a Step I grievance form in which he discusses his same-day efforts to get his property and specifically mentions defendants Heath and Howard.

---

Inc. to plaintiff for a typewriter in the amount of $179.99, plus $10.00 in shipping charges (Doc. Ent. 13-8 at 10) and an MDOC Trust Account Statement for the period October 16, 2003 to December 18, 2003, which lists Green's total disbursements as $16.49 (Doc. Ent. 13-8 at 11-13).

[5]A copy of this policy directive is attached to defendants' dispositive motion. Doc. Ent. 13-2.

[6]ARF-001353 was received at Step I on April 16, 2012. Doc. Ent. 13-3.

The Step I response was dated March 27, 2012, reviewed on April 3, 2012 and observed:

> Prisoner Rashad/Green received his personal property on [Saturday, March 17, 2012] [and] two legal footlockers on [Monday, March 19, 2012]. The Prisoner Personal Property policy and Prisoner Discipline policy were followed. He was in possession of contraband and was found guilty on two separate Class III contraband misconducts. There is no evidence to substantiate any violation of policy.

On April 5, 2012, Green completed a Step II grievance appeal. ARF Deputy Warden L. McRoberts responded on April 18, 2012. On April 23, 2012, Green completed a Step III appeal. The Step III grievance response dated May 11, 2012 upheld the Step II decision. *See* ARF-12-03-1045-19z (Doc. Ent. 13-4).

Second, on March 19, 2012, Green completed a Step I grievance form in which he discusses the same-day shakedown of his property and specifically mentions defendants Henricks, Messer and Lewis. The Step I response was dated March 27, 2012, reviewed on March 29, 2012 and observed:

> Prisoner Rashad/Green received his two legal footlockers on [Monday, March 19, 2012]. The Prisoner Personal Property policy and Prisoner Discipline policy were followed. He was in possession of contraband and was found guilty. There is no evidence to substantiate any violation of policy.

On April 4, 2012, Green completed a Step II grievance appeal. ARF Deputy Warden L. McRoberts responded on April 18, 2012. On April 23, 2012, Green completed a Step III appeal. The Step III grievance response dated May 11, 2012 upheld the Step II decision. *See* ARF-12-03-1046-19a (Doc. Ent. 13-5).

**4.    Plaintiff claims that defendants engaged in First Amendment retaliation.**

Generally, plaintiff contends that defendants conspired "to inflict evil reprehensible callous indifference against [him] for exercising his state and federal constitutionally secured

7

safeguards." Doc. Ent. 1 ¶ 10. Plaintiff also contends that defendants retaliated "to inflict adverse injury against [him] for exercising his state and federal constitutionally secured safeguards." Doc. Ent. 1 ¶ 11.

For example, plaintiff claims that, following his Friday, March 16, 2012 transfer to ARF, he asked when he would receive his personal property, and, after informing Keith that his property included two legal footlockers, Heath stated, "you'll get that on the first shift." Plaintiff seems to claim that this was a violation of the portion of MDOC Adrian Correctional Institutions (ACI) Operating Procedure 04.07.112 ("Prisoner Personal Property") (*see* Doc. Ent. 16 at 21-35) related to new arrivals. Doc. Ent. 1 ¶¶ 13-14.

Additionally, plaintiff claims that the delay in receiving his legal footlockers was caused by C/Os Heath and Howard's feelings about plaintiff "being a litigator [and] making threats to file complaints against them[,]" such as plaintiff's Saturday, March 17, 2012 contact with Sgt. Howard "about [C/O] Howard's refusal to get [plaintiff] his property[,]" or plaintiff's March 17, 2012 threat to Howard that plaintiff would file a grievance against him. Doc. Ent. 1 ¶¶ 15-21.

Furthermore, plaintiff claims that Lewis and/or Messer initiated Henrick's Monday, March 19, 2012 confiscation of plaintiff's typewriter, television and headphones as altered, which plaintiff claims "was just a pretext as punishment for making complaints and being a [l]itigator." Henricks then issued plaintiff a related Class III misconduct report. Doc. Ent. 1 ¶¶ 22-26, Doc. Ent. 13-8 at 7.

Also, plaintiff seems to allege that Lewis's Tuesday, March 20, 2012 search and inventory of his footlockers; confiscation of plaintiff's five typewriter ribbons, six print wheels, white out and book, and issuance of a Class III misconduct report (Doc. Ent. 16 at 10) was

motivated by plaintiff's same-day contact with the ARF Warden about plaintiff's property.  Doc. Ent. 1 ¶¶ 27-31.

Plaintiff's legal claims are based upon the First Amendment's "freedom of speech" and "petition" clauses. *See* Doc. Ent. 1 ¶ 34.  Specifically, Green claims that Messer, Henricks and Lewis "confiscat[ed] his personal property, in retaliation for making complaints against them for refusing to provide his property to him[.]" Doc. Ent. 1 ¶ 35.[7]

### 5.    Plaintiff's claims against Lewis which relate to the events of March 20, 2012 are not exhausted.

**a.**    "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such ***administrative remedies*** as are ***available*** are ***exhausted***."  42 U.S.C. § 1997e(a) ("Applicability of administrative remedies") (emphasis added).

---

[7]This report interprets plaintiff's complaint as based solely on alleged violations of the First Amendment.  In other words, as for plaintiff's assertions that Heath and Howard violated MDOC Adrian Correctional Institutions (ACI) Operating Procedure 04.07.112 ("Prisoner Personal Property") by delaying plaintiff's receipt of his legal footlockers (*see* Doc. Ent. 1 ¶¶ 14 & 20, Doc. Ent. 16 at 21-35) or that the "Contraband Handling" section of MDOC PD 04.07.112, ¶ EE (Doc. Ent. 13-8 at 23) was not honored (Doc. Ent. 16 ¶ 33) or that Messer violated MDOC PD 03.03.105 ¶ AAA by acting as the Hearing Officer on March 23, 2012 even though he was involved in the March 19, 2012 confiscation of plaintiff's property (*see* Doc. Ent. ¶¶ 23 & 32, Doc. Ent. 16 ¶ 37), this report does not interpret these allegations as independent procedural due process claims.

Even so, to the extent plaintiff intended to allege that defendants did not comply with MDOC policy and procedure when they confiscated his property, "[t]he state simply has no 'federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable.'" *Jackson v. Hamlin*, 61 Fed.Appx. 131, 132 (6th Cir. 2003) (quoting *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993)).

Furthermore, to the extent plaintiff challenges Messer's actions as the misconduct hearing officer, Messer is "entitled to absolute judicial immunity from inmates' § 1983 civil rights suits for actions taken in [his] capacit[y] as [a] hearing officer[.]"  *Clemons*, 52 Fed.Appx. at 763 (referencing *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988)).

In *Woodford v. Ngo*, 548 U.S. 81 (2006), the United States Supreme Court considered "whether a prisoner can satisfy the Prison Litigation Reform Act's exhaustion requirement, 42 U.S.C. § 1997e(a), by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" and held that "***proper*** exhaustion of administrative remedies is necessary." *Woodford*, 548 U.S. at 83-84 (emphasis added). The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. In other words, "the PLRA exhaustion requirement requires proper exhaustion." *Id.* at 93. The following year, in *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court explained:

> In *Woodford*, we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," - rules that are defined not by the PLRA, but by the prison grievance process itself. ***Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust."*** The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 549 U.S. at 218 (internal citations omitted) (emphasis added).

**b.**     Defendants argue that "Green has not properly exhausted his Complaint allegations as to C/O Lewis because he did not name her in a grievance regarding those issues raised in his Complaint." Doc. Ent. 13 at 12-14.[8]

---

[8]Defendants note that ARF-12-04-1353-28b was pending when plaintiff filed his May 29, 2012 complaint. The MDOC Prisoner Step III Grievance Report attached to defendants' November 2, 2012 motion indicates that ARF-1353 was received at Step III on May 4, 2012 but a Step III response had not yet issued. *See* Doc. Ent. 13-3. With respect to Step III grievances, "[t]he BHCS Administrator shall ensure the grievance is investigated and a response provided to the Grievance and Appeals Section in a timely manner." MDOC PD 03.02.130, effective July 9,

As for ARF-1045, which concerned the incident of March 17, 2012, defendants point out that it does not name Messer, Henricks or Lewis.  In this regard, defendants point to MDOC PD 03.02.130 ¶ R, which provides that "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."  Furthermore, defendants note, ARF-1045, which was initiated by plaintiff on March 17, 2012, that this grievance pre-dates the March 20, 2012 typewriter accessories confiscation involving Lewis.  Doc. Ent. 13 at 12-13.

As to ARF-1046, which concerned the incident of March 19, 2012, defendants contend that "[n]owhere in this Step I grievance does Green name C/O Lewis despite the requirement that the names of all those involved in the issue being grieved were to be included."  And, defendants note, ARF-1046, which was initiated by plaintiff on March 19, 2012, "pre-dates the March 20, 2012 confiscation of typewriter accessories involving C/O Lewis."  Doc. Ent. 13 at 13-14.

In the end, defendants claim that Green "has not properly exhausted any of his claims involving C/O Lewis under *Woodford v. Ngo*, which requires that the procedures of the policy be followed before a lawsuit may be maintained."  Doc. Ent. 13 at 14 (citing *Woodford*, 548 U.S. at 94-95).

**c.      In fact, as noted above, ARF-1046 specifically mentions defendants Henricks,**

---

2007, ¶ GG.  As the Sixth Circuit has stated, "[t]he prisoner . . . may not exhaust administrative remedies during the pendency of the federal suit."  *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citation omitted).

The Court does not have the benefit of a copy of this grievance to determine its subject matter.  However, MDOC PD 03.02.130 provides that "Within five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance (CSJ-247A) to the Step I Grievance Coordinator designated for the facility, field office, or other office being grieved[.]"  *Id.* ¶ V.  Given that ARF-01353 was received at Step I on April 16, 2012 (Doc. Ent. 13-3 at 2), this report assumes that ARF-01353 does not address the alleged March 2012 conduct at issue in this complaint.

11

**Messer and Lewis.  Therefore, the Court must consider whether plaintiff's claims against Lewis were properly exhausted by way of ARF-1046.**

Plaintiff's claims against Lewis concern her alleged participation in the Monday, March 19, 2012 shakedown.  In his complaint, plaintiff appears to allege that Lewis initiated the March 19, 2012 shakedown, which resulted in Henrick's confiscation of plaintiff's typewriter, TV and headphones (on the basis that these items were altered); Henrick's March 19, 2012 issuance of a class III misconduct for contraband; and, eventually, Messer's March 23, 2012 finding of guilty.  Doc. Ent. 1 ¶¶ 22-26, 32; *see also* Doc. Ent. 13-8 at 7-8.

Plaintiff's claims against Lewis also concern her alleged Tuesday, March 20, 2012 confiscation of certain property (five typewriter ribbons, six print wheels, one white out, and one book) and her issuance of the March 20, 2012 Class III misconduct for contraband which, eventually, resulted in Messer's March 23, 2012 finding of guilty.  Doc. Ent. 1 ¶¶ 27-31, 32; *see also* Doc. Ent. 16 at 10, 12.

**d.**     Plaintiff responds that Lewis was named in ARF-12-03-1046-19a (Doc. Ent. 13-5) and explains that this grievance "was not intended to challenge actions [o]ccurring on March 20, 2012."  Doc. Ent. 16 ¶¶ 7, 8.  In fact, as noted above, ARF-1046 concerned a March 19, 2012 incident.  Doc. Ent. 13-5 at 5.

As for plaintiff's claim that Lewis's issuance of the March 20, 2012 misconduct (Doc. Ent. 16 at 10), whereby his typewriter accessories and book were confiscated, was motivated by retaliation, plaintiff refers to the March 23, 2012 hearing (Doc. Ent. 13-8 at 8, Doc. Ent. 16 at 12) and the April 3, 2012 disapproval of his misconduct appeal (Doc. Ent. 16 at 14).  Doc. Ent. 16 ¶¶ 9-10.  Therefore, he maintains, he "used the appropriate 'available' administrative remedy

12

to exhaust this claim."  Doc. Ent. 16 ¶ 11.

Then, citing the September 8, 2010 Step II response in DRF[Carson City Correctional Facility]-10-08-02093-26B (Doc. Ent. 16 at 16)[9] and the October 29, 2009 Step III grievance response in MCF[Muskegon Correctional Facility]-09-05-00461-17a (Doc. Ent. 16 at 18),[10] plaintiff claims that MDOC officials at Step II and Step III have "consistently rejected a prisoner's attempt to exhaust retaliation-motivated misconducts through the grievance procedure, as being "NON-GRIEVABLE" issues, stating that it is properly raised during the hearing misconduct procedure."  Doc. Ent. 16 ¶¶ 13.

**e.**     In reply, defendants cite *Anthony v. Ranger*, Case No. 11-2199 (6th Cir. June 19, 2012), wherein the Sixth Circuit observed:

> Anthony does not deny that he failed to file a grievance againnst Williams, but argues that his claim against her was not grievable under [MDOC] P.D. 03.02.130 ¶ F.1.  However, this policy would not bar his grievance, because he is challenging Williams's decision to file a misconduct report rather than a decision made by a hearing officer finding him guilty of the sexual misconduct that Williams had reported.  Therefore, [MDOC] P.D. 03.02.130 provides no valid excuse for Anthony's failure to follow the procedures available for him under MDOC's grievance policy to exhaust his remedies.  Consequently, his claims against Williams regarding her misconduct reports are unexhausted[.]

---

[9]During August 2010, plaintiff completed a grievance which, apparently, alleged that he was not "given a fair investigation and the misconduct [he] received was retaliatory." On September 8, 2010, Deputy Warden Trierweiler denied the Step II appeal as non-grievable.  Doc. Ent. 16 at 16; DRF-10-08-02093-26B.

[10]During May 2009, plaintiff completed a grievance which, apparently, alleged that "on [May 12, 2009] he was retaliated against by a food service supervisor who wrote him two false misconducts."  Green completed a Step II grievance appeal on May 29, 2009.  MCF Warden S. Harry responded on June 8, 2009.  On or about June 13, 2009, Green completed a Step III appeal.  The Step III grievance response is dated October 29, 2009 and denies the Step III grievance appeal, because "[d]ecisions made in [misconduct] hearings are not grievable per PD 03.02.130[.]"  Doc. Ent. 16 at 18-19; MCF-09-05-00461-17a.

13

*See* Doc. Ent. 17-2 at 4. Defendant Lewis maintains that "Green was required under MDOC policy to file a grievance regarding his Complaint allegations and Green's admitted failure to file that grievance supports Defendants' assertion that the claim is unexhausted." Furthermore, defendants contend that the April 3, 2012 disapproval of plaintiff's misconduct appeal (Doc. Ent. 16 at 14) does not prove exhaustion. Instead, "[i]t establishes that there is no genuine issue of material fact as to Green's retaliation claim and that Defendants are entitled to judgment in their favor." Doc. Ent. 17 at 2.

**f.      Plaintiff's only claims against Lewis which have been exhausted are those contained in ARF-1046, which is dated March 19, 2012 and relates to the incidents of March 19, 2012 (Doc. Ent. 13-5 at 5).** Thus, plaintiff has grieved his claim against Lewis for her initiation of the March 19, 2012 search of his cell, which lead to Henrick's confiscation of plaintiff's typewriter, television and headphones on the basis that these items were altered; Henrick's issuance of a March 19, 2012 misconduct report (Doc. Ent. 13-8 at 7, Doc. Ent. 13-9 at 5); and Messer's March 23, 2012 guilty finding (Doc. Ent. 13-8 at 8). *See* Doc. Ent. 1 ¶¶ 22-26.

**On the other hand, plaintiff's claims against Lewis which relate to the events of March 20, 2012 are not exhausted.** In his complaint, plaintiff complains about Lewis's March 20, 2012 confiscation of typewriter ribbons, print wheels, white out and a book; and Lewis's March 20, 2012 issuance of a misconduct report (Doc. Ent. 16 at 10). *See* Doc. Ent. 1 ¶¶ 27-31. ARF-1045 is dated March 17, 2012 and relates to the incidents of March 17, 2012 (Doc. Ent. 13-4 at 5-6). Therefore, because these claims were not the subject of ARF-1045, this grievance does not operate to exhaust them.

To be sure, there are several types of issues which may not be grieved. MDOC PD

14

03.02.130 provides that "[g]rievances that raise the following non-grievable issues also shall be rejected:

> 1.   A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 "Prisoner Housing Unit Representatives/Warden's Forum".
>
> 2.   *Decisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing).*
>
> 3.   Decisions made by the Parole Board to grant, deny, rescind, amend or revoke parole, or not to proceed with a lifer interview or a public hearing.
>
> 4.   *Decisions made in minor misconduct hearings, including property disposition.*
>
> 5.   Issues not within the authority of the Department to resolve. The grievant shall be told who to contact in order to attempt to resolve the issue, if known.

MDOC PD 03.02.130, effective July 9, 2007, ¶ F (emphasis added).

However, plaintiff's reliance on the "misconduct appeals/request for rehearing" process (*see* MDOC PD 03.03.105 ¶¶ SSS-XXX) as a means of exhaustion for his March 20, 2012 claims against Lewis is misplaced.  MDOC PD 03.02.130 ¶ F(2) bars grievances on the hearing officer's decisions and "issues directly related to the hearing process[.]"  Therefore, to the extent plaintiff is challenging Lewis's March 20, 2012 search, confiscation and same-day issuance of a misconduct report, rather than Messer's March 23, 2012 guilty finding regarding the misconduct issued by Lewis, then plaintiff should have filed a grievance in accordance with MDOC PD 03.02.130.

**6.      Plaintiff's First Amendment retaliation claims against defendants do not survive summary judgment.**

**a.**      "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

**b.      Protected conduct.** As the Sixth Circuit has noted, protected conduct under *Thaddeus-X* "includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)). "If the grievances are frivolous, however, this right is not protected." *Id.*

Here, the protected conduct at issue are plaintiff's complaints against defendants, by way of filing his March 17, 2012 and March 19, 2012 grievances or otherwise, such as by complaining to Sgt. Howard on March 17, 2012, to Messer on March 19, 2012 or to the Warden on March 20, 2012. *See* Doc. Ent. 1 ¶¶ 16, 23 & 27, Doc. Ent. 16 ¶¶ 25-26.

**c.      Adverse action.** "[A]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 -397 (6th Cir. 1999). In other words, "[r]etaliation against a prisoner is actionable if it is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Thaddeus-X*, 175 F.3d at 398.

Here, the adverse actions are **(a)** the confiscation of plaintiff's property, including his

medication[11] and legal footlockers, and **(b)** the issuance of two misconduct reports, which eventually resulted in sanctions assessed on March 23, 2012 - a total of six days loss of privileges (beginning March 28, 2012 and ending April 3, 2012) and the destruction of his television, typewriter, headphones, typewriter accessories, book and white out. *See* Doc. Ent. 13-8 at 8, Doc. Ent. 16 at 12.

**d.    Causation.**  The third element of a First Amendment retaliation claim is "a causal connection between the protected conduct and the adverse action[.]" *Thaddeux-X*, 175 F.3d at 399.

**I.**      Defendants contend that "[p]laintiff's property was seized because it was determined to be contraband, irrespective of any grievances he filed."  Doc. Ent. 13 at 14-21. Defendants specifically "deny that any grievance or complaint that Green may have filed had any effect on the determination as to the receipt of his property."  Doc. Ent. 13 at 15.

Defendants support this argument with affidavits from four (4) of the five (5) defendants. *See* Doc. Ent. 13 at 15-19.  Generally, Heath, Lewis, Messer and Henricks each attest that "[i]nmate grievances and complaints are a daily occurrence, and [he/she] [has] no knowledge or recollection of any grievance or complaint Green may have filed."  Doc. Ent. 13-6 ¶ 10, Doc. Ent. 13-7 ¶ 8, Doc. Ent. 13-8 ¶ 15, Doc. Ent. 13-9 ¶ 7.  These defendants also attest that they "did not conspire with anyone," and "would have taken the same action with any prisoner, regardless of any grievance or any other factor."  Doc. Ent. 13-6 ¶ 9, Doc. Ent. 13-7 ¶ 9, Doc.

---

[11]According to plaintiff, his medication was "Lactace tablets."  Doc. Ent. 1 ¶ 19.  The Court suspects plaintiff is referring to lactase, which is "[a]n enzyme which hydrolyzes (decomposes) lactose (milk sugar) to galactose (a complex sugar) and dextrose (a simple sugar)." Schmidt's Attorneys' Dictionary of Medicine, Volume 3, L-13 (1995).

Ent. 13-8 ¶ 16, Doc. Ent. 13-9 ¶ 8.

It is defendants' position that "Green has not provided any evidence to prove the causal-connection element of his retaliation claim[,]" but "[d]efendants . . . have demonstrated by their affidavits that there are other legitimate reasons for the handling of Green's property." Doc. Ent. 13 at 19. In other words, defendants contend that Green "has failed to present any evidence demonstrating that the protected conduct was a factor in Defendants' decision. Green cannot show that he would have received all of his property 'but for' his grievance and complaints." Doc. Ent. 13 at 20. On the other hand, defendants contend, they "have shown that any prisoner would have been inventoried and confiscated based on circumstances other than Green's engaging in protected activity." Doc. Ent. 13 at 20-21. Finally, citing Heath's Affidavit (Doc. Ent. 13-6 ¶ 8) and *Shehee v. Luttrell*, 199 F.3d 295, 297-301 (6th Cir. 1999), defendants maintain that "C/O Heath did not have the authority to release Green's property[.]" Doc. Ent. 13 at 21.

    **ii.**    As to the **inventory of his property**, plaintiff refers to OP-ACI-04.07.112 (INTAKE-NEW ARRIVALS). Doc. Ent. 16 ¶ 16.[12] Among other things, this policy states:

> Property of prisoner transferring into ARF shall be processed within one (1) business day of arrival. Issuing Staff shall determine which items are allowed and return all allowable property to the prisoner within one (1) calendar day after its arrival at the facility.
>
> . . .
>
> Prisoner property received on Fridays and when the Property Room is closed, will be taken to the Property Intake Room (Caged Area of the Property Room) and logged in the Intake Property logbook as soon as possible. Staff will be assigned to issue the property and when issued, will document such in the Intake Property

---

[12]Attached to plaintiff's response is a copy of MDOC Adrian Correctional Institutions (ACI) Operating Procedure 04.07.112 ("Prisoner Personal Property"), effective May 7, 2012. Doc. Ent. 16 at 21-35.

logbook.

Assigned Staff are to complete a Property Intake Card from during the issuance phase, assuring the complete **make**, **model**, and **full serial number(s)** information is provided for all appliances/items; assuring the Prisoner **and** Issuing staff have both **signed**, and **printed** their names on both the Property Card and the Prisoner Inventory form.

Doc. Ent. 16 at 22-23 (emphasis in original).

Likewise, MDOC PD 04.07.112 ("Prisoner Personal Property"), effective March 21, 2011, states that "[g]eneral population prisoners in a Correctional Facilities Administration (CFA) institution other than the Special Alternative Incarceration Facility shall be allowed to purchase and possess only that personal property which is authorized by this policy. Prisoner property at all institutions and during transit shall be properly handled to guard against fire, safety, and sanitation hazards and minimize the risk of property loss or damage." Among the items addressed in the policy directive are "limitations on personal clothing," "limitations on personal property other than clothing," "property control," "contraband handling," "subsequent reductions in allowable personal property," and "procedures." *See* Doc. Ent. 13-8 at 17-25.[13]

Citing ¶ 21 of his complaint (Doc. Ent. 1 ¶ 21) and ¶ 8 of Heath's affidavit (Doc. Ent. 13-6 ¶ 8), plaintiff contends that Heath's Saturday, March 17, 2012 refusal to release plaintiff's legal footlockers "is evidence of his retaliatory motivation[,]" and points out that Rockwell's same-day shakedown and inventory of plaintiff's property, which was done at Heath's request and regarding which plaintiff signed an inventory receipt, did not result in a determination that

---

[13]Within the discussion of "limitations on personal property other than clothing," MDOC PD 04.07.112 states: "Upon request, a prisoner shall be provided reasonable access to his/her stored footlockers within two calendar days of staff receipt of the request. The prisoner also shall be allowed to exchange legal property in the stored footlockers for legal property stored in his/her possession." *Id.* ¶ O.

plaintiff's property was altered contraband.  Doc. Ent. 16 ¶¶ 17-18.  Then, citing ¶¶ 5-6 of

Lewis's affidavit (Doc. Ent. 13-7 ¶¶ 5-6), plaintiff contends that Lewis's representation that she

contacted Messer on March 19, 2012 and requested an inventory of plaintiff's property "was a

pretext to retaliation."  Doc. Ent. 16 ¶ 19.  Furthermore, citing ¶¶ 23 and 25 of his complaint

(Doc. Ent. 1 ¶¶ 23, 25), plaintiff responds, the "fact that . . . Henricks removed only my

appliances and nothing else, creates a valid inference that it was done on [Messer's] direction, in

conspiracy with Lewis."  Doc. Ent. 16 ¶ 20.  It is plaintiff's contention that Henricks did not

conduct an inventory of all of plaintiff's property, "as . . . Lewis claims she needed to create a

property card."  Doc. Ent. 16 ¶ 21.  According to plaintiff, there is no March 19, 2012 property

inventory sheet signed by Henricks, and defendants have not presented such a document to

support their claim.  Doc. Ent. 16 ¶ 22.  Finally, plaintiff claims that Lewis "has a common

practice of conspiring with other officials to seize and destroy pri[s]oner's property when they

make complaints against her or co-workers."  Doc. Ent. 16 ¶ 23.

       **iii.**     As to the **confiscation of his altered property**, plaintiff responds that his

complaints were not limited to grievances.  Doc. Ent. 16 ¶ 25.  Citing ¶¶ 16 and 27 of his

complaint (Doc. Ent. 1 ¶¶ 16, 27), plaintiff notes that he complained to supervisor Sgt. Howard

and later to the Warden.  Doc. Ent. 16 ¶ 26.  Then, citing his complaint (Doc. Ent. 1 ¶ 27) and his

March 20, 2012 Class III misconduct for contraband (Doc. Ent. 16 at 9-10), plaintiff claims that

Lewis "retaliated [for plaintiff's March 20, 2012 complaint to the Warden about plaintiff's legal

footlockers] by writing [plaintiff] a fabricated misconduct, claiming that [plaintiff] possessed

altered property[.]" Doc. Ent. 16 ¶ 27.  Referring to the ARF Prisoner Guidebook section on

Contraband (Doc. Ent. 16 at 45) and the Step I grievance response in ARF-01046 (Doc. Ent. 13-

5 at 6), plaintiff contends that, "[a]t no time did [his] property meet the requirements of being altered, based on [his] engraved prison numbers, which was the Defendants' initial claim." Doc. Ent. 16 ¶¶ 28-29. Furthermore, citing MDOC PD 04.07.112, effective 03/21/2011, ¶ X (Doc. Ent. 13-8 at 22), plaintiff claims that "[a]t no other time did officials at the sending facility, who packed up [his] property, determine that any of it was altered or contraband[.]" Doc. Ent. 16 ¶ 30. Plaintiff maintains that LCF staff "never noted on the inventory property receipt that an[y] of [his] property was altered contraband." Doc. Ent. 16 ¶ 31. Pointing to his complaint (Doc. Ent. 1 ¶ 15), plaintiff claims that defendants' "initial claim that [plaintiff's] property was altered, was simply a ruse or pretext to justify their actions for seizing and ultimately destroying [his] property, in retaliation for [plaintiff] complaining against them and being a litigator." Doc. Ent. 16 ¶ 32. Then, citing the "Contraband Handling" section of MDOC PD 04.07.112, ¶ EE (Doc. Ent. 13-8 at 23), plaintiff contends that he was not given an option for disposal of his property, which supports a conclusion that defendants' actions were malicious. Doc. Ent. 16 ¶ 33. Pointing to Hearings Officer Messer's March 23, 2013 findings (Doc. Ent. 13-8 at 8, Doc. Ent. 16 at 12), plaintiff contends that the findings were "not based on evidence of [his] property being altered[.]" Doc. Ent. 16 ¶ 34. Citing the section of MDOC Policy Directive 03.03.105 ("Prisoner Discipline"), effective April 9, 2012, ¶ AAA,[14] relating to hearings on Class III misconducts, plaintiff claims that "Messer's actions in holding the class III misconduct hearing were malicious[.]" Doc. Ent. 16 ¶ 37.

---

[14]"Unless the prisoner waives the Class III hearing and pleads guilty, an informal hearing shall be conducted in accordance with Administrative Rule 791.3310. The hearing shall be conducted within seven business days after the date of review. Only staff designated by the Warden shall conduct the hearing. ***Staff conducting the hearing shall have had no prior direct involvement in the matter at issue***." MDOC PD 03.03.105 ¶ AAA (emphasis added).

In the end, plaintiff maintains that "[d]ue to Defendants' retaliatory and malicious actions, [he is] deprived of the ability to view certain educational programs."  Also, he states, "due to not having [his] typewriter, [he] [has] had to pay prisoners with [his] meals (because [he is] indigent), to type [his] legal pleadings ([his] federal criminal and civil cases), due to the difficultness (long waiting list), it is to obtain one in the prison library."  Doc. Ent. 16 ¶ 38.

**iv.** It is defendants' position that "Green's retaliation claim is premised upon a misconduct he was found guilty of committing and his exhibit establishes that the misconduct conviction has never been overturned."  Doc. Ent. 17 at 3.

**e.** **Plaintiff has not shown that there was a causal connection between Henricks, Messer and Lewis's involvement in the March 19, 2012 confiscation of plaintiff's typewriter, television and headphones as "altered," (or the related misconduct or the related guilty finding) and plaintiff being a litigator or making complaints.**  Doc. Ent. 1 ¶¶ 22-26 & 35, Doc. Ent. 13-8 at 7.

To be sure, I note plaintiff's allegations that during the events of March 19, 2012, Henricks stated, "this is what happens when you make threats[.]" Doc. Ent. 1 ¶ 22.  I also note plaintiff's allegation that, after the confiscation, Henricks went to Messer's office and called Lewis to inform her of the confiscation.  Doc. Ent. 1 ¶ 25.  Furthermore, in response to defendants' motion, plaintiff contends that Henricks did not conduct an inventory of all of plaintiff's property, "as . . . Lewis claims she needed to create a property card."  Doc. Ent. 16 ¶ 21.

However, Lewis, Messer and Hendricks' affidavits have provided detailed versions of the events of March 19, 2012.  To begin, ARF C/O Lewis attests that "[o]n Monday, March 19,

22

2012, [she] contacted ARUS Messer and informed him that a property card had not been completed for Green, who had just transferred to ARF."  Doc. Ent. 13-7 ¶ 5.  Lewis "requested that a housing unit officer inventory Green's property so that the property room would have an accurate account of Green's current possessions.  This is the common practice when the proper paperwork is not completed on intake."  Doc. Ent. 13-7 ¶ 6.  Lewis "did not request that Green's property be inventoried in retaliation for Green's filing of a grievance or complaint."  Doc. Ent. 13-7 ¶ 7.  Lewis explains that she "requested that Green's property be inventoried because his property card had not been completed upon his transfer into ARF."  Doc. Ent. 13-7 ¶ 9.

Then ARF ARUS Messer attests that Lewis contacted him on Monday, March 19, 2012, and Messer assigned Henricks "the task of inventorying Green's property."  Doc. Ent. 13-8 ¶¶ 5-6.  Messer explains that he acted as the Hearing Officer on March 23, 2012 and conducted the hearing.  Doc. Ent. 13-8 ¶ 8.  Messer attests that he "did not instruct C/O Henricks to inventory Green's property nor did [he (Messer)] find Green guilty of misconduct and order the property items destroyed in retaliation for Green's filing of a grievance or complaint."  Doc. Ent. 13-8 ¶ 14.  Messer explains that he "instructed C/O Henricks to inventory Green's property because ARF property room personnel had indicated that a property card had not been completed for Green[,]" and that he "found Green guilty of the misconduct violation because he violated the disciplinary rules by possessing contraband property."  Doc. Ent. 13-8 ¶ 16.

ARF C/O Henricks attests that, "[o]n Monday, March 19, 2012, ARUS Messer assigned [Henricks] the task of inventorying Green's property."  Doc. Ent. 13-9 ¶ 4.  On that date, Henricks "discovered that the inmate number on Green's television, typewriter and Panasonic headphones had been sanded and re-numbered[,]" and Henricks "issued Green a Class III

23

misconduct for Contraband and secured the items in the 3 Block contraband locker."  Doc. Ent. 13-9 ¶ 5.  Henricks attests that he neither inventoried Green's property nor issued Green's misconduct "in retaliation for Green's filing of a grievance or complaint."  Doc. Ent. 13-9 ¶ 6. Henricks explains that he "inventoried Green's property because [his (Henricks's)] supervisor, ARUS Messer instructed me to do so[,]" and "issued Green the misconduct violation because he violated the disciplinary rules by possessing contraband property."  In other words, Henricks attests, he did not "issue the misconduct violation in retaliation for filing a grievance."  Doc. Ent. 13-9 ¶ 8.

**Moreover, the Court should conclude that Messer's guilty findings on each of plaintiff's Class III misconduct reports "checkmates" plaintiff's retaliation claim against Henricks and Lewis for issuing those misconduct reports.**  *See Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) ("Because the finding was based on some evidence of the violation, the finding essentially checkmates his retaliation claim.").  This position has been taken in many instances by the Sixth Circuit.  *See Patterson v. Godward*, No. 12-1282, 2012 WL 5477102 at *4 (6th Cir. Nov. 9, 2012) (defendants were entitled to summary judgment for their filing of misconduct tickets against plaintiff because plaintiff "was ultimately found guilty of the charged misconduct.") (citing *Henderson*); *Jackson v. Madery*, 158 Fed.Appx. 656, 662 (6th Cir. 2005) ("Jackson fails to state a claim against Madery [for filing the reports] because Jackson was convicted of the misconduct charges.") (citing *Henderson*); *Clemons v. Cook,* 52 Fed.Appx. 762, 763 (6th Cir. 2002) ("to the extent that Clemons has asserted a pure retaliation claim, he still fails to state a claim against Cook [for filing the misconduct] because he was convicted of the sexual misconduct charge.") (citing *Henderson*); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, 2

24

(6th Cir. Nov. 1, 2000) ("Burton was convicted of each misconduct charge [allegedly fabricated

by Rowley] and those convictions withstood his appeals.") (citing *Henderson*).[15]  As the Sixth

Circuit has noted, "[t]he filing of a disciplinary report is only actionable under 42 U.S.C. § 1983

as a prohibited 'retaliation' for the exercise of First Amendment rights if the report is in fact

false."  *Harris-Debardelaben v. Johnson*, No. 96-2398, 1997 WL 434357, 1 (6th Cir. 1997)

(citing *Henderson*).

Finally, I note plaintiff's claim that Hearings Officer Messer's March 23, 2013 findings

were "not based on evidence of [his] property being altered[.]"  Doc. Ent. 16 ¶ 34.  In addition to

Messer's observation that "[p]risoner cannot provide any evidence that the television or the

headphones were purchased by him at any time[,]" Messer's findings with respect to the March

19, 2012 confiscation of the typewriter, television and headphones state:

> . . . Lewis did a history check of prisoner Green.  A copy of her findings are
> attached to this report.  The dates that are on the receipt for receiving the
> typewriter at "Mound Facility" are actually when he was at RGC.  Also during
> this time frame, he never had $189.99 taken out of his account for any reason, let
> alone for a typewriter.  It appears that the receipt he provided was "typed" in
> some areas and computer generated in other areas.  The records prove that
> prisoner did not order a typewriter at Mound because he was actually at RGC and
> the money was never removed from his account.  The charge is upheld.

Doc. Ent. 13-8 at 8.[16]  Even if plaintiff is attacking this finding because it did not address the

---

[15]Attached to defendants' reply are some more recent examples of the Sixth Circuit's
position.  *See Vaughn v. Robb*, No. 12-1434 (6th Cir. Nov. 8, 2012) (quoting *Jackson*, 158
Fed.Appx. at 662) (Doc. Ent. 17-3); and *Moore v. Mastaw*, No. 12-1493 (6th Cir. Nov. 13, 2012)
(quoting *Jackson*, 158 Fed.Appx. at 662) (Doc. Ent. 17-5).

[16]Messer's findings with respect to the March 20, 2012 confiscation of the typewriter
accessories, book and white out state:

> In a previous hearing[,] it was determined that prisoner Green had a typewriter
> which was contraband.  Thus he is not allowed to possess the "accessories" that

25

"sanded & renumbered" television, typewriter and headphones on which Hendrick's March 19, 2012 misconduct was based (Doc. Ent. 13-8 at 7), "[t]he misconduct hearing reports written by the hearing officer show that there was some evidence to support the charges." *Jackson*, 158 Fed.Appx. at 662. *See also Harris-Debardelaben*, 1997 WL 434357 at 1 ("Harris-Debardelaben does not contend that the findings of the misconduct committees were not supported by sufficient evidence and it does not otherwise appear to be so. In the absence of any indication that the charges were false or that Harris-Debardelaben has suffered any impediment in his ability to file grievances, the claim lacks merit.").

**f.      Plaintiff has not shown that the delay by Heath and Howard in providing plaintiff with his legal footlockers was causally connected to plaintiff being a litigator, to plaintiff's March 17, 2012 complaint to Sgt. Howard about C/O Howard, or to plaintiff's March 17, 2012 threat to Howard  (*see* Doc. Ent. 1 ¶¶ 15-21).**

To be sure, plaintiff describes how he informed Heath and Howard about his legal materials (Doc. Ent. 1 ¶¶ 14-15), claims that Howard called plaintiff "one of those guys who likes to file lawsuits[,]" (Doc. Ent. 1 ¶¶ 15, 18), and accuses Howard and Heath of having stated on Saturday, March 17, 2012, "making threats will get you nothing." Doc. Ent. 1 ¶¶ 18-19. However, in the same complaint plaintiff acknowledges that on Saturday, March 17, 2012, Howard told plaintiff he would get his legal property on Monday, March 19, 2012 from the property room. Doc. Ent. 1 ¶ 15. Furthermore, plaintiff acknowledges that on Saturday, March

---

go with the typewriter that he never ordered "properly". The book is altered which makes it contraband. The white out is not allowed. The charge is upheld.

Doc. Ent. 16 at 12.

17, 2012, Heath informed plaintiff that "Lt. Sawyer said [plaintiff] could get all his property, except the two legal footlockers, which will be left for the property room staff to handle." Doc. Ent. 1 ¶ 20.

Also, even though there is no affidavit from defendant Howard, ARF C/O Heath attests that "[o]n Friday, March 16, 2012, Green did ask me about receiving his ride-in property. [Heath] informed Green that ride-in property is handled on first shift by the property room officer." Doc. Ent. 13-6 ¶ 4. The following day, on Saturday, March 17, 2012, "Green again asked [Heath] about receiving his ride-in property." Doc. Ent. 13-6 ¶ 5. Heath "did not tell Green 'making threats will get you nothing' or any words to that effect[,]" but did inform "Green that [he (Heath)] would check with Shift Command as [he (Heath)] [did] not have the authority to release property to an inmate." Doc. Ent. 13-6 ¶¶ 6-7. Heath then "spoke to Lt. Sawyer who authorized staff to release Green's personal property." Doc. Ent. 13-6 ¶ 8. Heath also attests that he did not "withhold Green's property in retaliation for Green's filing of a grievance or complaint." Doc. Ent. 13-6 ¶ 9.

Ultimately, it appears that plaintiff received some of his property on Saturday, March 17, 2012 after Rockwell searched and inventoried it. Doc. Ent. 1 ¶ 21. And, while plaintiff alleges that on March 20, 2012, he still did not have his legal footlockers (Doc. Ent. 1 ¶ 27), it appears he received them later that day after they were searched and inventoried by Lewis (Doc. Ent. 1 ¶¶ 28-29).

**7.   Defendants are entitled to dismissal of plaintiff's conspiracy claim.**

Within his complaint, plaintiff states, "[i]t is [his] belief that these officials [Heath and Howard] got upset about him being a litigator [and] making threats to file complaints against

27

them - and passed the word to each other to prevent him from getting his two legal footlockers in a timely fashion per policy." Doc. Ent. 1 ¶ 20. According to plaintiff, "ARF housing unit officials ha[ve] made it common practice to conspire with the property room official Lewis to have a prisoner's cell/room shake[n] down and confiscate a prisoner's property on the pretext that [it is] contraband[], whenever a prisoner ma[kes] a complaint against one of them." Doc. Ent. 1 ¶ 33. Plaintiff claims that all five defendants "unlawful[ly] agree[d] to conspire to retaliate[] against [plaintiff] for making complaints[.]" Doc. Ent. 1 ¶ 36.

Defendants are entitled to dismissal of plaintiff's conspiracy claim. First, the statutory basis for plaintiff's conspiracy claim is unclear. *See*, *i.e.*, 42 U.S.C. § 1983 ("Civil action for deprivation of rights"), 42 U.S.C. § 1985 ("Conspiracy to interfere with civil rights").[17] Second, plaintiff's claims of conspiracy are conjecture, and "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Finally, if the Court concludes that plaintiff has failed to state a First Amendment retaliation claim, then it should also conclude that plaintiff has failed to state a claim that defendants conspired to violate his First Amendment right against retaliation. *See Mazloum v. District of Columbia*, 442 F.Supp.2d 1, 10 (D.D.C. 2006) (in its analysis of the 42 U.S.C. § 1985(3) claim, the Court stated, "[s]ince plaintiff's cover-up allegations fail to implicate a constitutional right, a conspiracy that has as its purpose the very

---

[17]"To establish a civil conspiracy under the statute, the claimant must show that (1) 'two or more persons ... conspire[d]' (2) 'for the purpose of depriving ... [the claimant] of the equal protection of the laws' due to racial or class-based animus and that the conspirators (3) committed an act 'in furtherance of the object of such conspiracy' (4) that 'injured' the claimant." *Maxwell v. Dodd*, 662 F.3d 418, 422 (6th Cir. 2011) (citing 42 U.S.C. § 1985(3)).

28

same non-cognizable cover-up also fails to state a legal claim."); *Lara v. City of Chicago*, 968 F.Supp. 1278, 1292 (N.D. Ill. 1997) ("the complaint fails to contain allegations reflecting that plaintiff suffered a constitutional injury because of the alleged permanent transfer. Consequently, count III fails to contain allegations supporting the fourth element of a § 1985(3) claim.").

These deficiencies are not cured by plaintiff's November 29, 2012 response, wherein he cites ¶¶ 23 and 25 of his complaint (Doc. Ent. 1) and states, the "fact that . . . Henricks removed only my appliances [typewriter, television and headphones] and nothing else, creates a valid inference that it was done on [Messer's] direction, in conspiracy with Lewis." Doc. Ent. 16 ¶ 20. Nor are these deficiencies cured by plaintiff's claim that Lewis "has a common practice of conspiring with other officials to seize and destroy pri[s]oner's property when they make complaints against her or co-workers." Doc. Ent. 16 ¶ 23.

Lewis attests that she contacted Messer on March 19, 2012 (Doc. Ent. 13-7 ¶ 5), Messer acknowledges this contact (Doc. Ent. 13-8 ¶ 5), and Henricks attests that Messer gave him (Henricks) an assignment on March 19, 2012 (Doc. Ent. 13-9 ¶ 4). Still, plaintiff's statement does not change the fact that plaintiff's First Amendment retaliation claims do not survive summary judgment.

**8.    The Court should deny plaintiff's May 8, 2013 Fed. R. Civ. P. 56(d) ("When Facts Are Unavailable to the Nonmovant.") request.**

**a.**    Plaintiff's May 8, 2013 filing is based upon Fed. R. Civ. P. 56(d), which provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d) ("When Facts Are Unavailable to the Nonmovant.").

**b.**     On May 8, 2013, plaintiff filed what is titled his "supplemental affidavit under Rule 56(c)

in opposition to summary judgment[.]" Doc. Ent. 19.  In this motion, plaintiff contends that,

"[o]n September 24, 2012, [he] mailed to the [defense] a request for production of documents

and interrogatories[,]" and claims that defendants have refused to respond within thirty (30)

days.  Doc. Ent. 19 ¶¶ 5, 6.[18]  Among other things, plaintiff claims he "is in need of any/all

documents, and log book entries created to record cell/room shake-down of plaintiff's personal

property on March 19, 2012."  Doc. Ent. 19 ¶ 7.  Plaintiff claims such documents "will provide

the evidence showing that defendant Henricks only confiscated/removed plaintiff's appliances

and never inventoried his other property, which consisted of an entire footlocker of various

personal items."  Doc. Ent. 19 ¶ 8.  It is plaintiff's position that defendants confiscated his

appliances "for the sole purpose of conspiring to retaliate against him for making verbal

complaints to Supervisors and Warden about not getting his legal footlocker on time, which

contained all [of] his legal Court documents (i.e., Criminal Case, Habeas Corpus Case, Civil

Litigations)."  Doc. Ent. 19 ¶ 9.[19]  In other words, plaintiff contends, "[d]efendants' alleged need

to inventory plaintiff's personal property was a pretext to only confiscate his appliances (not his

other property), on the further pretext that the appliances were contraband."  Doc. Ent. 19 ¶ 10.

Also, he claims he "is in need of any/all documents[,] memorandum, D.O.M.s' and

Policies, requiring officials to destroy his personal property an[d] not allow him the option of

---

[18]Plaintiff's response affidavit references an attached Exhibit A-1 (Doc. Ent. 19 at 1 ¶ 5); however, there is no attachment to this filing.

[19]Plaintiff Green is also a party to the prisoner civil rights case *Green v. Lennox and Kast*, No. 2:12-cv-14003-SFC-RSW (E.D. Mich.).

mailing it home, on March 2012." Doc. Ent. 19 ¶ 11.[20]  According to plaintiff, such documents

"would reveal evidence showing that the MDOC's normal practice was to allow a prisoner the

option to mail the personal property home, donate it or have officials destroy it." Doc. Ent. 19 ¶

12.  Plaintiff claims he was not given an option or choice of what to do with the confiscated

property, because "it was the defendants' intention to conspire to ensure that he would be

perman[ent]ly deprived of his appliances, in retaliation." Doc. Ent. 19 ¶ 13.  In other words,

plaintiff states that defendants "used their position of authority to use the policy procedures as a

back door means to conspire and deprive plaintiff of his personal property." Doc. Ent. 19 ¶ 14.

Finally, it is plaintiff's position that he cannot "adequately challenge the defendants'

[m]otion for [s]ummary [j]udgment without limited discovery." Doc. Ent. 19 ¶ 15.

**c.**      In their May 22, 2013 response, defendants contend that "[i]f Green is seeking answers to

discovery, the proper procedure is to file a motion to compel[,]" and "[i]f Green is asserting that

he needs discovery to respond to [d]efendants' [m]otion for [s]ummary [j]udgment, he's too

late." Doc. Ent. 20 at 1.

Citing their November 2, 2012 dispositive motion (Doc. Ent. 13); the fact that plaintiff

filed his affidavit in response (Doc. Ent. 16 at 1-7 ¶¶ 1-39) and exhibits (Doc. Ent. 16 at 8-51) on

November 29, 2012, even though my November 7, 2012 scheduling order permitted him until

January 6, 2013 to do so (*see* Doc. Ent. 15); and Fed. R. Civ. P. 56(d), defendants contend that,

"[n]owhere in his response to [d]efendants' motion did Green assert that he was unable to

respond and needed discovery." Doc. Ent. 20 at 1-2.  Furthermore, noting that the January 6,

---

[20]MDOC PD 04.07.112 ("Prisoner Personal Property"), effective March 28, 2013,
provides direction on "Disposition of Contraband." *Id*. ¶¶ GG-LL.

2013 response deadline had passed approximately four (4) months before plaintiff filed his May 8, 2013 Rule 56(d) request, defendants point out that "[a] motion for relief under Rule 56(d) must be filed *before* the deadline for submitting a response to the motion for summary judgment." *Chapple v. Wickerink*, No. 1:11-cv-979, 2012 WL 4506778, 1 (W.D. Mich. Sept. 28, 2012) (emphasis in original); *see also* Doc. Ent. 20 at 2, *Kermode v. University of Mississippi Medical Center*, No. 09-584, 2011 WL 2619096 (S.D. Miss. July 1, 2011).

**d.**     The Court should deny plaintiff's May 8, 2013 Fed. R. Civ. P. 56(d) request (Doc. Ent. 19) on the basis that it is tardy.  Furthermore, although plaintiff's November 29, 2012 affidavit in response states that there is no March 19, 2012 property inventory sheet signed by Henricks and that defendants have not presented such a document to support their claim (Doc. Ent. 16 ¶ 22), plaintiff's same affidavit in response does not mention the need for discovery in order to respond.  *See* Doc. Ent. 16 at 1-7 ¶¶ 1-39.  If, as plaintiff represents in his May 8, 2013 supplemental affidavit, his September 24, 2012 discovery requests were not responded to within thirty (30) days (*see* Doc. Ent. 19 ¶¶ 5-6), he could have mentioned this in his November 29, 2012 response (Doc. Ent. 16).

**9.     The Court need not address defendants' entitlement to qualified immunity.**

Defendants argue that they are entitled to qualified immunity, because they "acted reasonably and did not violate Plaintiff's clearly established constitutional rights."  Doc. Ent. 13 at 21-23.

As the United States Supreme Court has stated, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982).[21]

The Sixth Circuit has stated that the qualified immunity inquiry requires a three-step analysis: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir.1996)).[22] *See also Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th

---

[21]Furthermore, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818-819.

[22]*See also Saucier v. Katz*, 533 U.S. 194 (2001), wherein the Supreme Court stated, "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. *See also Drogosch v. Metcalf*, 557 F.3d 372, 377 (6th Cir. Feb. 25, 2009) (citing *Saucier*, 533 U.S. at 201). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Also, the Supreme Court has stated, "[a]lthough we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that *it is often beneficial*." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (Jan. 21, 2009) (emphasis added).

Cir.2004)).

Importantly, the defense of qualified immunity is best addressed after determining whether plaintiff has stated a constitutional claim upon which relief can be granted. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998), citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

It is defendants' position that they "merely inventoried Green's property and confiscated those altered items which Green was unable to prove ownership of at an administrative hearing." Doc. Ent. 13 at 22. In other words, defendants submit, "the issue of qualified immunity does not come into play[,] because Green did not suffer a constitutional deprivation[.]" Alternatively, defendants contend, "they are entitled to qualified immunity[,] because their actions were objectively reasonable under the circumstances." Doc. Ent. 13 at 23.

If the Court agrees with my foregoing recommendations regarding the merits of plaintiff's First Amendment retaliation and conspiracy claims, then the Court need not address whether defendants are entitled to qualified immunity with regard to those claims.

**10.    The Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.**

As noted above, plaintiff claims that defendants violated Mich. Const. art. I, § 3 ("Assembly, consultation, instruction, petition"), Mich. Const. art I, § 5 ("Freedom of speech and of press") and Mich. Const. art. I, § 17 ("Self-incrimination; due process of law; fair treatment at investigations"). Doc. Ent. 1 ¶¶ 37-38. Plaintiff also argues that defendants' conduct was

grossly negligent, thereby meeting an exception to Mich. Comp. Laws § 691.1407

("Governmental immunity from tort liability").  Doc. Ent. 1 ¶ 39.

Green requests that the Court exercise supplemental jurisdiction over his state law claims

against defendants. Doc. Ent. 1 ¶ 12.  Defendants argue that "[p]laintiff's State law claims

should be dismissed[,]" because "there is no genuine issue of material fact regarding Green's

federal constitutional claims[.]"  Doc. Ent. 13 at 23-24.

28 U.S.C. § 1367 concerns supplemental jurisdiction.  It provides that the district court

may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed

all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3).

If the Court agrees with the foregoing recommendation, then it should decline to exercise

supplemental jurisdiction over plaintiff's state law claims.

## III.   **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United

States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but

fail to raise others with specificity, will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.

Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections

is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: August 2, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 2, 2013.

s/Jane Johnson
Deputy Clerk